# EXHIBIT A

130361

## BOONE CIRCUIT COURT
### III Division
CASE NO. 13-CI-1098



WESTCHESTER MEDICAL CENTER
7700 UNIVERSITY DRIVE
WESTCHESTER, OHIO 45069

       Plaintiff                Judge

vs.

MONA EDER                      COMPLAINT
1492 TUSCAN CT APT 112
Florence KY 41042

           Defendant

1. Defendant, MONA EDER ("Defendant") owes Plaintiff, WESTCHESTER MEDICAL CENTER ("Plaintiff") for medical services provided.

2. Plaintiff has requested payment of said account and Defendant has refused payment.

3. Defendant owes Plaintiff $30,500.36. Attached as Exhibit "A" is a copy of said account.

WHEREFORE, judgment should be granted in favor of the Plaintiff against Defendant in the amount of $30,500.36 plus interest from and after date of judgment at the legal rate provided by law, all costs of this action and any further relief to which the Plaintiff may be entitled.

                      C. EDWARD NOE KY BAR 51925
                      Attorney for the Plaintiff
                      Noe & MacLeid Co., L.P.A.
                      810 SYCAMORE ST. 4TH FL.
                      CINCINNATI, OHIO 45202
                      513/381-7333

STATEMENT OF ACCOUNT
WESTCHESTER MEDICAL CENTER

APR 16 2013



MONA EDER
1492 TUSCAN CT APT
112
FLORENCE KY 41042

| PATIENT # | PATIENT NAME | D.O.S. | BALANCE |
|---|---|---|---|
| | EDER, MONA K | 10/12/11 | 30500.36 |

TOTAL BALANCE DUE:  30500.36



FILED
BOONE CIRCUIT/DISTRICT COURT
SEP 1 7 2013
DIANNE MURRAY CLERK
BY:

## COMMONWEALTH OF KENTUCKY
## BOONE CIRCUIT COURT
## THIRD DIVISION
## CASE NO. 13-CI-1028

**WEST CHESTER MEDICAL CENTER**                    **PLAINTIFF**

**V.**

**MONA EDER**                                      **DEFENDANT**

---

### ANSWER OF DEFENDANT MONA EDER

---

Defendant Mona Eder states her Answer to the Complaint of Plaintiff West Chester

Medical Center as follows:

1. Mona Eder denies the allegations of paragraph 1 of Plaintiff's complaint.

2. Mona Eder denies the allegations of paragraph 2 of Plaintiff's complaint.

3. Mona Eder denies the allegations of paragraph 3 of Plaintiff's compliant.

### <u>AFFIRAMTIVE DEFENSES</u>

4. Plaintiff has failed to state a claim upon which relief may be granted.

5. Plaintiff's claims are barred by the doctrine of estoppel, consent, waiver, and/or laches.

6. Plaintiff's claims are barred as it has failed to act in good faith or with reasonableness.

7. Plaintiff's claims are set off by injury to Mona Eder.

8. Plaintiff has failed to mitigate its damages.

9. Plaintiff's claims may be barred in whole or in part by the applicable statute of

   limitations.

10. Plaintiff's claims are barred by their own contributory negligence.

11. Defendant provisionally pleads as affirmative defenses those defenses in CR 8.03 as if

    fully restated herein even though the applicability of those defenses will be determined

during discovery. The Defendant reserves the right to assert additional defenses, whether affirmative or otherwise, about which she presently lacks sufficient knowledge or information but which may become available during the course of this litigation through discovery and other means.

WHEREFORE, the Defendant, Mona Eder, by counsel respectfully demands as follows:

1. That the Plaintiff's Complaint be dismissed with prejudice;

2. For her costs expanded herein;

3. For a trial by jury on all issues so triable; and

4. For any and all other relief, legal or equitable, to which she may appear entitled.

Respectfully Submitted,

Jesse A. Shore (95147)
Law Office
5247 Madison Pike
Independence, Kentucky 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
E-mail: jshore@ericdeters.com
*Counsel for Defendant Mona Eder*

2

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served this 17th day of September, 2013 via regular mail upon the following:

Bill Paliobeis
Frost Brown Todd LLC
3000 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
*Counsel for West Chester Medical Center*

Jesse A. Shore

3

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
THIRD DIVISION
CASE NO. 13-CI-1028

FILED
BOONE CIRCUIT/DISTRICT COURT
SEP 17 2013
DIANNE MURRAY, CLERK
BY: _____ D.C.

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

V.

MONA EDER                                                       DEFENDANT

---

## COUNTERCLAIM OF DEFENDANT MONA EDER

---

Comes now Defendant Mona Eder, and pursuant to CR 13.01 and other applicable law and states her Counterclaim against West Chester Medical Center, UC Health, Dr. Atiq Durrani ("Dr. Durrani") and the Center for Advanced Spine Technologies, Inc. ("CAST") as follows:

### INTRODUCTION

1. At all times relevant, Defendant, Mona Eder (hereinafter "\Mrs. Eder"), was a resident of and domiciled in the State of Kentucky.

2. At all times relevant, Dr. Abubakar Atiq Durrani (hereinafter "Dr. Durrani") was licensed to and did in fact practice medicine in the State of Ohio and Kentucky.

3. At all times relevant, Center for Advanced Spine Technologies, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio and Kentucky, and was and is a corporation authorized to transact business in the State of Ohio and Kentucky.

4. At all times relevant, West Chester Hospital, LLC (hereinafter "West Chester Hospital"), was a limited liability company authorized to transact business and perform medical services in the State of Ohio and operating under the trade name West Chester Hospital.

5. At all times relevant, Defendant UC Health Inc., was a duly licensed corporation which

included, owned, operated and/or managed multiple hospitals including, but not limited
to West Chester Hospital, and which shared certain services, profits, and liabilities of
hospitals including West Chester.

6. At all times relevant herein, West Chester Medical Center, Inc., aka West Chester
Hospital held itself out to the public, and specifically to Mrs. Eder, as a hospital
providing competent and qualified medical and nursing services, care and treatment by
and through its physicians, physicians in training, residents, nurses, agents, ostensible
agents, servants and/or employees.

7. The amount in controversy exceeds the jurisdictional threshold of this Court.

8. The subject matter of the Complaint arises out of medical treatment by these parties in
Butler County, Ohio and Boone County, Kentucky. Furthermore, West Chester Medical
Center selected Mrs. Eder's home jurisdiction to pursue this action. This Court is thus
the proper venue and jurisdiction to grant Mrs. Eder the relief she seeks.

## FACTUAL ALLEGATIONS

9. Mrs. Eder incorporates by reference each and every allegation in the paragraphs above.

10. In 2010, Mrs. Eder began experiencing pain in her neck and shoulders.

11. Mrs. Eder began treating her pain with physical therapy and during this she was referred
to Dr. Durrani and CAST.

12. In or around March 2011, Mrs. Eder first consulted with Dr. Durrani at his CAST offices.

13. Upon consultation with Dr. Durrani, he immediately recommended that Mrs. Eder
immediately undergo a fusion surgery.

14. Mrs. Eder did not immediately undergo this surgery because she was called to jury duty
and waited until October 2011 to undergo the surgery.

15. Prior to the surgery, Mrs. Eder consulted with Dr. Durrani in multiple appointments at his Ohio and at his Boone County, Kentucky CAST offices.

16. On or about October 12, 2011, Mrs. Eder underwent the spine fusion surgery.

17. Upon information and belief, during this surgery Dr. Durrani fused three of Mrs. Eder's vertebrae when she had only one herniated disc.

18. Upon information and belief, during the October 12, 2011 surgery, Dr. Durrani experimentally used BMP-2/Infuse without the Mrs. Eder's consent or knowledge.

19. Dr. Durrani and the other parties did not obtain Mrs. Eder's consent to use BMP-2/Infuse prior to the surgery.

20. Dr. Durrani and the other parties did not disclose their intent to use BMP-2/Infuse, and further, did not disclose their intent to use BMP-2/Infuse in a way not approved by the FDA.

21. BMP-2 is manufactured, marketed, sold and distributed under the trade name "Infuse" by Medtronic.

22. Dr. Durrani is a consultant for Medtronic.

23. Defendants did not inform the Mrs. Eder of Durrani's financial interest, conflicts of interest or consulting arrangement with Medtronic.

24. For use in spinal surgery, BMP-2/Infuse is approved by the FDA for a limited procedure, performed on a limited area of the spine, using specific components. Specifically, the FDA approved Infuse for one procedure of the spine: Anterior Lumbar Interbody Fusion ("ALIF" or "Anterior" approach); and only in one area of the spine: L4 to S1; and only when used in conjunction with FDA-Approved Components: LT-CAGE Lumbar Tapered Fusion Device Component ("LT-CAGE")

3

25. Use of Infuse in cervical or thoracic surgery, or use through the back (posterior), or side (lateral), or on areas of the spine outside of the L4-S1 region (e.g., the cervical spine), or using components other than or in addition to the LT-CAGE is not approved by the FDA, and thus such procedures and/or use of non-FDA approved componentry is termed "off-label."

26. When used off-label, Infuse frequently causes excessive or uncontrolled (also referred to as "ectopic" or "exuberant") bone growth on or around the spinal cord. When nerves are compressed by such excessive bone growth, a patient can experience, among other adverse events, intractable pain, paralysis, spasms, and cramps in limbs.

27. The product packaging for BMP-2/Infuse indicates it causes an increased risk of cancer four (4) times greater than other bone graft alternatives.

28. During the surgeries, Dr. Durrani and the other parties did not use the LT-CAGE.

29. Dr. Durrani and the other parties did not obtain Mrs. Eder's informed consent to use BMP-2/Infuse "off label" in the surgeries.

30. Dr. Durrani and the other parties improperly used BMP-2/Infuse on Mrs. Eder, causing harm.

31. Upon information and belief, during the October 12, 2011, Dr. Durrani and the other parties used an unapproved bone graft material called "Puregen".

32. Dr. Durrani and the other parties did not obtain Mrs. Eder's informed consent to experimentally use "Puregen" in her spine surgery.

33. Puregen is sold by Purcell Labs and consists of harvested stem cells from living humans.

34. Mrs. Eder was never informed she would have stem cells from another living human being implanted into her body, and did not consent to the unapproved use of Puregen.

4

35. The Director of the FDA's Office of compliance and Biologics Quality had issued a violation to Purcell Labs before Mrs. Eder's surgery based on the illegal sale and distribution of the unapproved stem cell product Puregen.

36. When Defendants implanted Puregen into Mrs. Eder it was done without consent and in violation of Section 361 of the Public Health Service Act, codified at 42 USC 264 [the "PHS Act"] and in violation of the Federal Food, Drug and Cosmetic Act, 21 USC 321 (g).

37. The "Puregen" bone graft material Dr. Durrani and the other parties used on Mrs. Eder was unregulated, and was not approved to be sold or used in humans.

38. As of the date of this filing, Puregen remains unapproved by the FDA for use in humans without an Investigation New Drug ("IND") or experimental informed consent of the patient.

39. Dr. Durrani and the other parties did not obtain an IND and did not inform Mrs. Eder of their intent to use, or actual use, and did not get her consent to use Puregen on her during her surgery causing Mrs. Eder harm.

40. Mrs. Eder's post-operative consultation with Dr. Durrani occurred at his CAST office in Boone County, Kentucky.

41. In the time since the surgery, Mrs. Eder has experienced new limitations on her movements and pain that was not present prior to her surgery.

42. Upon information and belief, Mrs. Eder's surgery was negligently performed and/or medically unnecessary and as a result, Mrs. Eder has suffered harm.

## COUNT I: NEGLIGENCE DR. DURANI

43. Mrs. Eder incorporates by reference each and every allegation in the paragraphs above.

5

44. Dr. Durrani owed Mrs. Eder the duty to exercise the degree of skill, care, and diligence that an ordinary prudent health care provider would have exercised under like or similar circumstances.

45. Dr. Durrani breached this duty causing damages by failing to exercise the requisite degree of skill, care, and diligence that an ordinary prudent health care provider would have exercised under the same or similar circumstances through, among other things, negligent surgery, improper diagnosis, medical mismanagement and mistreatment of Mrs. Eder, including but not limited to unnecessary surgery, failed surgery, failure to adequately provide informed consent, improper performance of surgery and improper follow up care addressing the patient's concerns.

46. As a direct and proximate result of the aforementioned acts and omissions by the Dr. Durrani, Mrs. Eder sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

## COUNT II: NEGLIGENCE –CAST, WEST CHESTER HOSPITAL AND UC HEALTH

47. Mrs. Eder incorporates by reference each and every allegation in the paragraphs above.

48. West Chester, UC Health and CAST owed their patient, Mrs. Eder, the duty to exercise the degree of skill, care, and diligence an ordinary prudent health care provider would have exercised under like or similar circumstances.

49. West Chester, UC Health and CAST breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinary prudent health care provider

6

would exercise under like or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis, and mistreatment of Mrs. Eder.

50. As a direct and proximate result of the aforementioned acts and omissions by West Chester, UC Health and CAST, Mrs. Eder sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

## COUNT III: VICARIOUS LIABILITY – DEFENDANT WEST CHESTER HOSPITAL, CAST AND UC HEALTH

51. Mrs. Eder incorporates by reference each and every allegation in the paragraphs above.

52. At all times relevant, Dr. Durrani was an agent or employee of West Chester, UC Health and CAST.

53. Upon information and belief, Dr. Durrani was a shareholder, owner, director, and/or member manger of West Chester, UC Health and CAST, and therefore had a direct financial motive and interest in their profits.

54. Dr. Durrani was performing within his scope of employment, agency relationship, and/or for the financial gain of the West Chester, UC Health and CAST when dealing with Mrs. Eder

55. West Chester, UC Health and CAST are responsible for harm caused by acts of employees, agents, and owners which conduct occurred within the scope of employment under the theory of respondent superior, ostensible agency, and/or vicarious liability.

56. West Chester, UC Health and CAST are liable for the negligent acts and omissions of Dr. Durrani alleged in this Complaint.

57. As a direct and proximate result of these West Chester, UC Health and CAST acts and omissions by and through their agents and/or employees, Mrs. Eder sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

## COUNT IV: NEGLIGENT HIRING, RETENTION, CREDENTIALING, & SUPERVISION – DEFENDANT WEST CHESTER HOSPITAL

58. Mrs. Eder incorporates by reference each and every allegation in the paragraphs above.

59. West Chester was responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses, and those doctors with privileges at the hospital.

60. West Chester was in a unique position to control, monitor, and oversee the conduct and consequences of residents, doctors, nurses, and those doctors with privileges, and owed Mrs. Eder a duty to exercise said control and ensure a competent medical staff.

61. West Chester provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

62. West Chester and Dr. Durrani participated in experiments using BMP-2/Infuse bone graft on patients, including Mrs. Eder, without obtaining proper informed consent thereby causing harm to Mrs. Eder.

63. West Chester Hospital requested Dr. Durrani resign from West Chester Hospital.

64. Upon information and belief, Dr. Durrani resigned from West Chester Hospital after a negotiated a deal with the administration.

65. West Chester breached their duty to Plaintiffs, inter alia, by not controlling the actions of

8

Dr. Durrani and the doctors, nurses, staff, and those with privileges, during the medical treatment of Mrs. Eder at West Chester Hospital and by granting privileges to Dr. Durrani, an unqualified physician.

66. As a direct and proximate result of the acts and omissions herein described, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges by West Chester Hospital, Mrs. Eder sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

## COUNT V: NEGLIGENT HIRING, RETENTION, CREDENTIALING, & SUPERVISION – ALL DEFENDANTS

67. Mrs. Eder incorporates by reference each and every allegation in the paragraphs above.

68. West Chester, UC Health and CAST were responsible for the hiring, credentialing, screening, oversight, and conduct of their residents, doctors, nurses, and those doctors with privileges at the hospital.

69. West Chester, UC Health and CAST were in a unique position to control, monitor, and oversee the conduct and consequences of residents, doctors, nurses, and those doctors with privileges, and owed Mrs. Eder a duty to exercise said control and ensure a competent medical staff.

70. West Chester, UC Health and CAST provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

71. West Chester, UC Health and CAST participated in experiments using BMP-2 bone graft

9

on patients, including Mrs. Eder, without obtaining proper informed consent thereby causing harm to Mrs. Eder.

72. West Chester, UC Health and CAST knew or had reason to know that Dr. Durrani had his privileges terminated and/or refused at Christ Hospital, Children's Hospital, Good Samaritan Hospital, Deaconess Hospital, and St. Elizabeth Hospital prior to granting privileges to Dr. Durrani.

73. West Chester, UC Health and CAST breached their duty to Mrs. Eder, inter alia, by not controlling the actions of Dr. Durrani and the doctors, nurses, staff, and those with privileges, during the medical treatment of Mrs. Eder and by granting privileges to Dr. Durrani, an unqualified phyisican.

74. As a direct and proximate result of the acts and omissions herein described, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges by West Chester, UC Health and CAST, Mrs. Eder sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

## COUNT VI: BATTERY – DR. DURRANI

75. Mrs. Eder incorporates by reference each and every allegation in the paragraphs above.

76. Dr. Durrani committed battery against Mrs. Eder by performing a surgery that was unnecessary, contraindicated for Mrs. Eder's medical condition, and for which he did not properly obtain informed consent, inter alia, and by the failure to provide this information to the Mrs. Eder.

77. Mrs. Eder would not have agreed to the surgeries if they knew that the surgeries were

10

unnecessary, not approved by the FDA, and not indicated.

78. As a direct and proximate result of the aforementioned battery by Dr. Durrani, Mrs. Eder sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

<u>**COUNT VII: FRAUD – ALL DEFENDANTS**</u>

79. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

80. Dr. Durrani, West Chester, UC Health and CAST made material, false representations to Mrs. Eder and her insurance company related to Mrs. Eder's treatment including: stating the surgeries were necessary, that Dr. Durrani "could fix [Mrs. Eder] up", that more conservative treatment was unnecessary and futile, that the surgery would be simple or was "no big deal", that Mrs. Eder would be normal within days after each surgery, that the procedures were medically necessary and accurately reported on the billing to the insurance company, that the surgery was successful, that Mrs. Eder was medically stable and ready to be discharged.

81. Dr. Durrani, West Chester, UC Health and CAST knew or should have known such representations were false, and/or made the misrepresentations with utter disregard and recklessness as to their truth that knowledge of their falsity may be inferred. Dr. Durrani manipulated his diagnosis and the medical tests to recommend surgery that he knew was not indicated. Dr. Durrani was operating a scam in which he would receive referrals through the facility and the medical community, conduct experiments on behalf of Medtronic using their products, and perform those surgeries on whomever his patients were regardless of medical need.

11

82. Dr. Durrani, West Chester, UC Health and CAST made the misrepresentations both before and after the surgeries with the intent of misleading the insurance company and the Mrs. Eder into reliance upon them. Specifically, the misrepresentations were made to induce payment by the insurance company, without which Dr. Durrani would not have performed the surgeries, and to induce Mrs. Eder to undergo the surgery without regard to medical necessity and only for the purpose of receiving payment.

83. Mrs. Eder justified in their reliance on the misrepresentations because a patient has a right to trust their doctor and that the facility is overseeing the doctor to ensure the patients of that doctor can trust them. There is no expectation that a doctor will have so compromised his/her medical judgment as to endanger their patients in experimental and unnecessary surgeries such that the patient should have a duty to engage in an in-depth investigation of the doctor to ensure their medical judgment is not so compromised. The Mrs. Eder relied on West Chester, UC Health and CAST holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at their health care facility as assurance the facility was overseeing Dr. Durrani and vouching for his surgical abilities. West Chester, UC Health and CAST expected this reliance and requires patients to trust the facility to only allow surgeons who are competent and trustworthy to perform surgeries there.

84. The insurance company of Mrs. Eder justifiably relied on the misrepresentations in the billing documents they received because it would be so reckless for a facility to have no safeguards to protect its patients from such flagrant fraud and abuse from their doctors that it would be unreasonable for the insurance company to foresee the possibility. Dr. Durrani's scheme required the cooperation, either through complicity or through

12

affirmative support, of the facilities at which he operated; they either had to turn a blind eye to what was happening or take steps to support it, otherwise it would have been impossible for Dr. Durrani to do this.

85. As a direct and proximate result of the aforementioned fraud, Mrs. Eder did undergo a surgery which was paid for in whole or in part by their insurance company, and suffered severe and grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

**WHEREFORE,** Mrs. Eder requests entry of judgment in her favor, compensatory damages in an amount to be determined at trial, punitive damages, together with costs, interest and attorney fees as allowed by law.

Respectfully Submitted,

Jesse A. Shore (95147)
Law Office
5247 Madison Pike
Independence, Kentucky 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
E-mail: jshore@ericdeters.com
*Counsel for Defendant Mona Eder*

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 17th day of September, 2013 via regular mail upon the following:

Bill Paliobeis
Frost Brown Todd LLC
3000 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
*Counsel for West Chester Medical Center*

Jesse A. Shore

14



FILED
BOONE CIRCUIT/DISTRICT COURT
OCT 08 2013
DIANNE MURRAY, CLERK
BY:_____D.C.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
THIRD DIVISION
CASE NO. 13-CI-1028

WEST CHESTER MEDICAL CENTER     :
                                 :
           Plaintiff,               :
                                   :
v.                                          :
                                   :
MONA EDER                        :
                                   :
           Defendant.             :

## MOTION OF DR. ATIQ DURRANI AND THE CENTER FOR ADVANCED SPINE TEHCHNOLOGIES, INC. TO DISMISS "COUNTERCLAIM"

### NOTICE OF HEARING

Please take notice that this Motion will be made on <u>Tuesday, October 29, 2013, at 9:00 a.m.</u> in the above court.

### MOTION

Abubakar Atiq Durrani, M.D. ("Dr. Durrani") and Center for Advanced Spine Technologies, Inc. ("CAST"), by and through counsel, specially appear before the Court for the purpose of seeking dismissal of the "Counterclaim" filed by Defendant, Mona Eder, purportedly against Dr. Durrani and CAST (among others). Dr. Durrani and CAST are not parties to this action, and have never asserted any claims against Eder. Therefore, Eder's attempt to assert a "counterclaim" against them is legally and procedurally defective. The Counterclaim should be dismissed. This motion is brought under Rules 12.02, 13.01, et seq,, and 19.01, et seq., of the Kentucky Rules of Civil Procedure. Further support for the Motion is set forth in the following memorandum.

<u>MEMORANDUM</u>

I.     **BACKGROUND & RELEVANT FACTS**

The parties to this action are Plaintiff, West Chester Medical Center ("West Chester"), and Defendant, Mona Eder ("Eder"). Dr. Durrani and CAST were not named as parties in West Chester's Complaint. And they have not been added as parties to this action any time since then. Simply put, Dr. Durrani and CAST are nonparties to this action. Nevertheless, Eder filed a "Counterclaim," in which she purports to assert claims against Dr. Durrani, and CAST (she also asserts claims against West Chester, as well as "UC Health" – another nonparty).

II.    **LEGAL ARGUMENT**

Eder's "counterclaim" fails on its face because Dr. Durrani and CAST are not parties to this action. The "counterclaim" should, therefore, be dismissed.

Rule 12.02 of the Kentucky Rules of Civil Procedure provides "every defense, in law or fact, to a...counterclaim...shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:...(g) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more defenses or objections in a responsive pleading or motion."

Eder failed to join either Dr. Durrani or CAST as parties to this action before attempting to assert a counterclaim against them. Rule 19.01 provides for the joinder of parties to an action if complete relief cannot be afforded without them. Similarly, Rule 14.01 provides "a defendant may move for leave as a third-party plaintiff to assert a claim against a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Eder did not proceed under either of these Rules.

Instead, Eder tried to file a "counterclaim" against Dr. Durrani and CAST. But she could not do that because Dr. Durrani and CAST are not "opposing parties" to her in this action.

Rule 13.01 of the Kentucky Rules of Civil Procedure provides for the filing of counterclaims. That rule instructs that "a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against <u>any opposing party</u>, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The other Rules pertaining to counterclaims – Rule 13.02, et seq. – likewise provide that counterclaims may be brought against an "opposing party."

Dr. Durrani and CAST are not "opposing parties" in this action, and therefore, Eder cannot assert a "counterclaim" against them. She failed to add them as parties to this action. Any claim asserted against them should, therefore, be dismissed.

## III.    CONCLUSION

In view of all the foregoing, Dr. Durrani and CAST ask the Court to dismiss the Counterclaim asserted against them by Defendant, Mona Eder.

Respectfully submitted,

Michael F. Lyon
David E. Williamson        (#94877)
LINDHORST & DREIDAME CO., L.P.A.
312 Walnut Street, Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Attorneys for Respondents, Abubakar Atiq Durrani, M.D.*
*and Center for Advanced Spine Technologies, Inc.*

579427                                    3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by electronic and/or regular U.S. Mail on this ___8ᵗʰ___ day of October, 2013.

Bill Paliobeis
FROST BROWN TODD, LLC
3000 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
BPaliobeis@fbtlaw.com
*Counsel for Plaintiff, West Chester Medical Center*

Jesse A. Shore, Esq.
Law Office
5247 Madison Pike
Independence, KY 41051
jshore@ericdeters.com
*Counsel for Defendant, Mona Eder*

David E. Williamson
Attorney at Law

579427

4

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
THIRD DIVISION
CASE NO. 13-CI-1028

WEST CHESTER MEDICAL CENTER                    PLAINTIFF

v.

MONA EDER                                       DEFENDANT

_____

### MOTION TO DISMISS
_____

### NOTICE OF HEARING

Please take notice that this Motion will be made on <u>Tuesday, October 29, 2013 at 9:00 a.m.</u> in the above court.

### MOTION

Pursuant to Rules CR 12.02(f) and CR 9.02 of the Kentucky Rules of Civil Procedure, West Chester Medical Center and UC Health, by and through counsel, move this Court for an order dismissing Counts Two, Three, Four, Five and Seven of Mona Eder's ("Eder") Counterclaim ("Counterclaim") in the above-captioned matter because Defendant fails to state a claim upon which relief can be granted. The facts and legal basis for this Motion are set forth in the attached Memorandum in Support.

Respectfully Submitted,

Walter E. Haggerty, Esq. (0005610)
Bill J. Paliobeis, Esq. (0066666)
FROST BROWN TODD, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel. (513) 651-6879
Email: whaggerty@fbtlaw.com
Email: bpaliobeis@fbtlaw.com
*Attorneys for West Chester Hospital, LLC and
UC Health*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

This litigation was initiated by West Chester Medical Center as a collection action against Eder for unpaid medical expenses. After a default judgment was entered against Eder this Court granted Eder leave to Answer and file a Counterclaim. Eder has now filed Counterclaims against West Chester Medical Center and others who were not parties to the original litigation, i.e. Dr. Durrani and UC Health. Eder's Counterclaim stems from a surgery performed on Eder by Dr. Abubakar Atiq Durrani, M.D. ("Dr. Durrani") on October 12, 2011 at West Chester Medical Center.

Eder has presented this Court with seven claims for relief. Five of those claims are asserted against these moving parties and are the subject of this Motion. First, Eder's claim for negligence set forth in Count Two, negligence of West Chester Medical Center and UC Health is barred by the applicable statute of limitations. Eder's claims set forth in Count Three cannot succeed where West Chest Medical Center and UC Health cannot be liable for the conduct of Dr. Durrani. Eder's claim for negligent credentialing in Counts Four and Five fail because Kentucky law provides no such cause action against a hospital.

West Chester Medical Hospital and UC Health request that the Court dismiss the Seventh Count of the Counterclaim, "Fraud – All Defendants" because Eder has failed to plead facts sufficient to sustain a cause of action for fraud against West Chester Medical Center pursuant to CR 9.02.

Lastly, UC Health requests that the Court dismiss Eder's counter-claim on the grounds that it was not a party to the original action and therefore cannot be subjected to said counter-claim.

## II.    LEGAL STANDARD ON MOTION TO DISMISS

Kentucky's Civil Rules allow a party to assert, by motion, the defense that a Complaint fails "to state a claim upon which relief can be granted." CR 12.02(f). Such motions are used to resolve questions of law and the sufficiency of the Complaint. A motion to dismiss for failure to state a claim under CR 12.02 must be granted if "it appears the pleading party would not be entitled to relief under any set of facts which could be proven in support of his claim." *Pari-Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977); *see also Wood v. Wyeth-Ayerst Lab's*, 82 S.W.3d 849, 851 (Ky. 2002). When considering a Motion to Dismiss, the Court construes the material facts alleged in Plaintiff's Complaint to be true. *See Berthelsen v. Kane*, 759 S.W.2d 831, 831-32 (Ky. App. 1988); *see also Upchurch v. Clinton County*, 330 S.W.2d 428, 429-30 (Ky. 1959).

In evaluating a motion to dismiss, the court should be limited to the complaint and any exhibits attached thereto. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The Sixth Circuit, as well as numerous other Circuits, has held that it is reversible error to consider matters outside the complaint on a motion to dismiss for failure to state a claim." *Kelly v. Arco Industries Corp.*, 721 F. Supp. 873, 877 (W.D. Mich. 1989) (citing *Sims v. Mercy Hospital*, 451 F.3d 171 (6th Cri. 1971). Therefore, the Court should not consider any extraneous materials introduced by Eder in her response, including any information not alleged in the Complaint.

While this Court must presume that all factual allegations in the Complaint are true for purposes of this Motion it need not assume the truth unsupported conclusions. The court should strip the claims of any legal conclusions in its evaluation of whether it withstands the motion to dismiss. *Moss v. Robertson*, 712 S.W.2d 351, 352 (Ky.App. 1986). Factual allegations must be

enough to raise a right to relief above the speculative level; the right to relief must be plausible. In other words, the Plaintiff must set the grounds of their entitlement to relief with more than mere labels and conclusions – a formulaic recitation of the elements of a cause of action will not suffice. If the allegations of the Complaint are unable to support a claim of entitlement to relief, "this basic deficiency should . . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 233-234 (3d ed. 2004)).

In this case, Eder's allegations relative to the Seventh Count are merely "unilateral legal conclusions framed as allegations"[1] that are not pled with any particularity. Accordingly, the Seventh Claim fails as a matter of law and should be dismissed.

## III. LAW & ARGUMENT

### A. Ohio Law Should Govern the Substance of this Dispute

The substantive law of the state of Ohio applies to the matter at hand. Kentucky's rules on conflicts of law depend on the nature of the dispute. In some cases, "there is no valid reason for applying the law of Kentucky instead of the law of the situs." *McGinnis v. Taitano*, 3 F. Supp. 2d 767, 769 (W.D. Ky. 1998). This is such a case.

Virtually all of the wrongdoing alleged by Eder is said to have occurred in Ohio. Although Eder does suggest at some point having visited an office in Kentucky, such marginal interaction in this state is insufficient to direct the application of Kentucky law. "[S]imply proving *any* contact with Kentucky is not enough to justify applying Kentucky tort law. Rather, the contact must be 'significant.'" *Custom Prods. v. Fluor Daniel Can., Inc.*, 262 F. Supp. 2d

[1] *Amrhein v. Telb*, 2006 Ohio 5107, P16 (6th Dist. 2006).

767, 773 (W.D. Ky. 2003). The ultimate inquiry is whether the contacts in Kentucky are sufficient to "prove Kentucky has an interest in this case." *Id.* In this case, Eder specifically chose to leave Kentucky, for Ohio, to receive her medical treatment. Kentucky has no interest in affording the protection of its laws to a party choosing to engage in commerce in another state, instead of Kentucky. "If anything, Kentucky's greater interest is in deterring the type of lawsuit which might seek a choice of law advantage." *Id.* Eder should not be permitted to engaging in such forum-shopping, by filing this case in Kentucky, rather than in Ohio, where she sought treatment in the first place. Ohio law should apply.

**B. Eder's Claims For Negligence and Malpractice Are Barred By The Statute Of Limitations.**

Eder alleges in her Counterclaim that the surgery that is the subject of her negligence claims was performed on October 12, 2011. (*See* Counterclaim para. 16). Eder does not allege any other conduct giving rise to her Counterclaim other than that which arose from the surgery performed by Dr. Durrani on that date. Further, Eder expressly alleges that, "[i]n the time *since* the surgery, Mrs. Eder has experienced new limitations on her movements and pain that was not present prior to surgery." (emphasis added). (*See* Counterclaim para. 41). Eder goes on to allege that "Mrs. Eders's surgery was negligently performed and/or medically unnecessary and as result, Mrs. Eder has suffered harm." (*See* Counter-claim para. 42).

KRS 413.140 states in pertinent as follows:

> "The following actions shall be commenced within one (1) year after the cause of action accrued:
>
> (e) An action against a physician, surgeon, dentist, or hospital licensed pursuant to KRS Chapter 216, for negligence or malpractice."

Kentucky law is clear that the statute of limitations for filing a medical malpractice action is one-year from the alleged negligence. *See McCollum v. Sisters of Charity of Nazareth Health Corp.,* 799 S.W.2d 15, 18 (Ky. 1990). Clearly from the face of Eder's Counterclaim her claims, in part, allege medical malpractice against a physician, Dr. Durrani, and a Hospital, West Chester Medical Center. The claims involve allegations surrounding a surgery that was performed on October 12, 2011. Pursuant to KRS 413.140, Eder was required to commence her cause of action for malpractice against these parties within one-year, i.e., October 12, 2012. However, Eder first asserted her claims for malpractice in her Counterclaim filed on September 17, 2013, nearly one year after the statute of limitations expired. Thus, Eder's malpractice claims are barred by the applicable statute of limitations and should be dismissed.

### C. Kentucky Law Does Not Recognize A Cause Of Action For Negligent Credentialing.

Eder sets forth a claim for "negligent credentialing" in Counts Four and Five. These claims fail as a matter of law because Kentucky does not recognize a claim for negligent credentialing. *See Patterson v. Marshall,* 2008-CA-000119-MR, 2009 WL 2341448 (Ky. Ct. App. July 31, 2009), unpublished attached; stating "[a]s a preliminary matter, we note that the tort of negligent credentialing has not been formally recognized in Kentucky." *See also; Kulka v. Vora,* 2009-CA-000027-MR, 2011 WL 918408 (Ky. Ct. App. Mar. 18, 2011) unpublished attached, stating that, "that a negligent credentialing cause of action has not been recognized in Kentucky." Because there is no authority in Kentucky for such a cause of action Eder's claim should be dismissed.

**D. Counts Three and Seven Must Be Dismissed Because Plaintiff Cannot Be Held Liable for Dr. Durrani's Allegedly Tortious Actions**

Eder has not alleged that Dr. Durrani was in any way an agent of the Hospitals, thereby making the Hospitals potentially liable for Dr. Durrani's allegedly tortious actions. In fact, taking the Eder's Counterclaim as it is pled, it is quite evident that Dr. Durrani was an independent contractor who was permitted to perform surgeries at the West Chester Medical Center. Eder clearly did not look to the Hospitals for care, but rather to Dr. Durrani. The Complaint states that Eder "consulted with Dr. Durrani <u>at his CAST offices</u>."[2] Leading up to the surgery, Eder "consulted with Dr. Durrani in multiple appointments <u>at his Ohio and at his Boone County, Kentucky CAST offices</u>." There is no allegation in the Counterclaim that Eder ever looked to the Hospitals to provide her surgical care. There is no claim that she had ever visited the Hospitals on any occasion prior to this surgery, nor is there any indication that she visited the Hospitals on any occasion after this surgery. There is no claim that the Hospitals ever provided any independent treatment or that the Hospitals themselves did anything wrong with regard to her care before or after the procedure. Rather, every allegation of wrongdoing in the Counterclaim is directed at the surgery itself and the care provided by Dr. Durrani.[3]

Eder's claims of negligence, vicarious liability, and fraud against the Hospitals are all rooted in the concept that the Hospitals can be held liable for the allegedly tortious actions of Dr. Durrani. But Eder cannot in good faith claim that Dr. Durrani was an agent of the Hospitals when Eder looked directly to Dr. Durrani for treatment and care, and the Hospitals were simply

---

[2] Counterclaim at ¶ 12.
[3] It is instructive that every allegation of wrongdoing is directed at "Dr. Durrani and the other parties." It is clear that all allegations of wrongdoing stem directly from the surgery performed by Dr. Durrani.

the physical location where the care was provided. As such, Eder's Counterclaims on Counts 2, 3, and 7 must be dismissed as to the Hospitals.

### E. Regardless of Agency Theory, Eder Has Still Failed to Properly Plead a Claim of Fraud Against the Hospitals.

To sustain a cause of action for fraud, Eder must prove the following: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."[4] Because allegations of fraud and misrepresentation are taken very seriously, they must meet a very high standard of proof. Thus, CR 9.02 provides that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated *with particularity*." (Emphasis added.) The high standard of particularity set by CR 9.02 means that a Complaint must, at a minimum: (1) specify the statements claimed to be false; (2) state the circumstances surrounding the making of the allegedly false statements (including time and place); (3) identify the defendant(s) claimed to have made the statement; and (4) specifically set forth the specific damages allegedly suffered as a result of the fraud.[5] In addition, the Complaint still must otherwise state facts sufficient to support each element of a fraud claim.

---

[4] *State ex rel. The Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas,* 97 Ohio St. 3d 69, 2002-Ohio-5312, 776 N.E.2d 92 (2002) (quoting *Russ v. TRW, Inc.,* 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991)).

[5] *Korodi v. Minot,* 40 Ohio App.3d 1, 4, 531 N.E.2d 318 (Ohio App. 10th 1987); *Lisboa v. Tramer,* 2012 Ohio 1549, P31 (8th Dist. 2012); See also, *Wright v. Bank of N.Y.,* 2012 Ohio 2289, P19 (9th Dis. 2012)("The circumstances constituting fraud, as that phrase is used in Rule 9(B), include the time, place, and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud."); accord, *Hamblin v. Daugherty,* 9th Dist. Nos. 06CA0109-M, 06CA0112-M, 2007 Ohio 5893, ¶ 20.

In this case, Eder's Complaint falls well short of this standard because the Complaint does not: (1) reveal *specific* statements claimed to be false or reveal the circumstances surrounding the alleged making of each of those statements; (2) identify the particular defendant alleged to have made the statement; or (3) specifically set forth the damages allegedly suffered by Eder as a result of the alleged fraud (as opposed to her insurance company).[6]

### 1. Eder does not Specifically Identify Allegedly False Statements or any Information Regarding the Circumstances Surrounding the Making of Allegedly False Statements.

Eder's only attempt to identify specific statements alleged to be false can be found in paragraph 80 of the Counterclaim. In that paragraph, Eder presents a laundry list of topics upon which she claims to have been misled. But this laundry list contains no descriptions of specific statements alleged to be false. For example, one alleged misrepresentation identified in this paragraph is "that the procedures were medically necessary and accurately reported on the billing to the insurance company." But this statement does not assert when such representations were made, when bills were sent, or which specific services Eder believes were inaccurate or not medically necessary.[7] The other allegations contained in this paragraph are similarly broad. They are expansive subject matters upon which Eder claims to have been misled. They are not specific statements that were allegedly false.

Even if the Court finds that some of the statements identified in paragraph 80 of the Counterclaim are sufficiently specific with regard to the content of the statement made, the

---

[6] *Wright v. Bank of N.Y.*, 2012 Ohio 2289, P20 (9th Dist. 2012).

[7] See *Monroe v. Forum Health*, 2012-Ohio-6133 (11th Dist. App. No. 2012-T-0026), at ¶ 58 ("In the present matter, we find that the Monroes did not plead their Fraud claim with sufficient particularity and it was proper for the trial court to dismiss that claim. Although the Monroes assert that they were improperly billed for certain services in October, they do not assert when the false statements about the services rendered were made or when the bills were sent. They also did not explain which specific services Monroe was falsely led to believe had been rendered. Finally, the Monroes failed to show what was given or obtained as a consequence of the alleged fraud. Although they assert that they were billed for such services, there is no allegation regarding the payment made for these services. Therefore, we cannot find that anything was given to or obtained by Forum Health as a consequence of the fraudulent action.").

Counterclaim provides no information as to the circumstances surrounding any of those statements. Eder never identifies the dates on which any those statements were allegedly made, never identifies the location of the parties when the statements were allegedly made, never identifies to whom the statements were directed, and never identifies what other individuals, if any, may have been present to witness the making of these allegedly false statements.

CR 9.02 obligates a claimant to specifically present the statements that were allegedly falsely made and the circumstances surrounding the making of those statements. Simply reciting a laundry list of subject matters upon which one claims to have been misled, as Eder has done in Count Seven of the Counterclaim here, is not sufficient. Count Seven does not provide a clear statement of any false statement or circumstances surrounding the making of a false statement and should be dismissed.

2. **Eder Does Not Identify the Particular party Alleged to Have Made False Statements.**

CR 9.02 further obligates Eder to identify the particular person making each allegedly false statement.[8] Eder has ignored that requirement completely within the Counterclaim. Count Seven is a claim levied against "All Defendants" and states that every counterclaim defendant made false misrepresentations."[9] Eder makes no attempt to break out which allegedly false statements may have been made by which party. As a result, West Chester Medical Hospital and UC Health are unable to tell whether Eder is alleging that they made any actual false statements to Eder, or whether Eder is attempting to hold all parties liable solely as a result of allegedly false statements made by Dr. Durrani. This lack of clarity and specificity fails to satisfy the pleading requirement of CR 9.02 and should result in dismissal of this claim.[10]

---

[8] *Wright v. Bank of N.Y.*, supra.
[9] Complaint at ¶ 119, 121, 122, 123.
[10] See *Wright v. Bank of N.Y.*, supra.

3.     **The Complaint Does Not Specifically Delineate the Damages Allegedly Suffered by Eder.**

Eder's Seventh Count is further insufficiently pled regarding the specific harm suffered by Eder as a result of the alleged fraud. Although paragraph 85 of the Counterclaim does list specific harms allegedly suffered by Eder, the Counterclaim also vaguely and broadly references harm allegedly suffered by Eder's insurance company on multiple occasions: the alleged statements were made "with the intent of misleading the insurance company and the Mrs. Eder";[11] the "insurance company of Mrs. Eder justifiably relied" upon misrepresentations;[12] and the surgeries "were paid for in whole or in part by her insurance company".[13]

Eder's insurance company is not a named party to this lawsuit. To the extent that Eder's Seventh Count seeks to recover damages for misrepresentations allegedly made to Eder's insurance company, the Count must fail and must be dismissed.[14] And because the Seventh Count is not clear about the specific damages allegedly suffered by Eder (as opposed to damages suffered jointly by Eder and her insurance company), the Seventh Count is insufficiently pled and must fail pursuant to Civ. R. 9(B).

F.  **UC Health Is Not A Proper Party To The Counter-claim.**

Eder's "counterclaim" fails on its face because UC Health is not a party to this action. The "counterclaim" should, therefore, be dismissed.

---

[11] Complaint at ¶ 82.
[12] *Id.* at ¶ 84.
[13] *Id.* at ¶ 85.
[14] Further, the Seventh Count appears to be pled as a common law fraud claim alleged against all Defendants. But because Eder's Complaint is not entirely clear, Defendants note that if the fraud claim brought by Eder seeks to recover money paid to Defendants through Medicare, Medicaid, or some other federal source of funding, the proper claim would be for a violation of the Federal False Claims Act. See 31 U.S.C. § 3729, et seq. This Court has no jurisdiction over such a claim, as they must be filed under seal and in federal district court pursuant to 31 U.S.C. § 3730.

Rule 12.02 of the Kentucky Rules of Civil Procedure provides "every defense, in law or fact, to a . . . counterclaim . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (g) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more defenses or objections in a responsive pleading or motion."

Eder failed to join UC Health as a party to this action before attempting to assert a counterclaim against it. Rule 19.01 provides for the joinder of parties to an action if complete relief cannot be afforded without them. Similarly, Rule 14.01 provides "a defendant may move for leave as a third-party plaintiff to assert a claim against a person not a party to the action who is or may be liable to him for all or part of the plaintiffs claim against him." Eder did not proceed under either of these Rules.

Instead, Eder tried to file a "counterclaim" against UC Health. But she could not do that because UC Health is not an "opposing party" to her in this action. Rule 13.01 of the Kentucky Rules of Civil Procedure provides for the filing of counterclaims. That rule instructs that "a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any *opposing party*, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The other Rules pertaining to counterclaims — Rule 13.02, et seq. — likewise provide that counterclaims may be brought against an "opposing party."

UC Health is not an "opposing party" in this action, and therefore, Eder cannot assert a "counterclaim" against it. She failed to add UC Health as a party to this action. Any claim asserted against it should, therefore, be dismissed.

IV.    CONCLUSION

Even viewing the pleadings in a light most favorable to Eder, Eder's Seventh Count utterly fails to plead any fraud claims with sufficient particularity to satisfy the pleading requirements of Civ. R. 9(B). Accordingly, this Court should dismiss the Seventh Count of the Eder's Complaint, with prejudice.[15]

Respectfully Submitted,

_____
Walter E. Haggerty, Esq. (0005610)
Bill J. Paliobeis, Esq. (0066666)
FROST BROWN TODD, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel. (513) 651-6879
Email: whaggerty@fbtlaw.com
Email: bpaliobeis@fbtlaw.com
*Attorneys for West Chester Hospital, LLC and UC Health*

---

[15] In the event the Court finds this argument unavailing and does not dismiss this Count, the Hospitals hereby request that the Court, at least, require Eder to disclose more precise facts in support of this Count, and more specifically state the damage suffered by actual parties to this lawsuit.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served on the following on this 11th day of October, 2013, by U.S. mail, postage paid:

Eric C. Deters, Esq.
Jesse A. Shore, Esq.
ERIC C. DETERS & ASSOCIATES
5247 Madison Pike
Independence, Kentucky 41051
*Attorney for Defendants*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
LINDHORST & DREIDAME
312 Walnut Street, Suite 3100
Cincinnati, Ohio 45202-4091
*Attorneys for Respondents Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc.*

_____

WCHLibrary 0123682.0610258  177140vvvvvv2

2009 WL 2341448
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RCP Rule 76.28(4)
before citing.

NOT TO BE PUBLISHED
Court of Appeals of Kentucky.

Harold PATTERSON, Individually and as
Administrator of the Estate of Claressia Patterson,
Deceased, Appellant.
v.
William G. MARSHALL, Jr., M.D.; and
Community United Methodist Hospital, Inc.
(d/b/a Methodist Hospital), Appellees.
and
Bluecross Blueshield of Alabama, Appellant
v.
William G. MARSHALL, Jr., M.D.; Community
United Methodist Hospital, Inc. (d/b/a Methodist
Hospital); and Harold Patterson, Individually and
as Administrator of the Estate of Claressia
Patterson, Deceased, Appellees.

Nos. 2008-CA-000119-MR, 2008-CA-000157-MR. |
July 31, 2009.

West KeySummary

1    Privileged Communications and
     Confidentiality
     ⟜Medical or Health Care Peer Review

     The husband was not prejudiced by the trial
     court's denial to compel the hospital to produce
     documents relating to the doctor's hospital
     credentials and peer review files during the
     medical negligence phase of the trial. After the
     doctor performed surgery on husband's now
     deceased wife to relieve symptoms of poor
     circulation in her legs, she was diagnosed with
     an infected surgical graft which resulted in the
     amputation of her left leg. After the documents
     were reviewed in camera, it was determined that
     the documents related to behavioral issues the
     doctor experienced while at the hospital and
     were not relevant to the wife's treatment.

Appeal from Henderson Circuit Court, Action No.
00-CI-00850; Stephen A. Hayden, Judge.

**Attorneys and Law Firms**

Curtis J. Hamilton, III, Henderson, KY, for appellants.

Daniel G. Brown, James E. Smith, Louisville, KY, for
appellee, William G. Marshall, Jr., M.D.

Daniel G. Brown, for appellee, William G. Marshall, Jr.,
M.D.

Ridley M. Sandidge, Jr. Louisville, KY, for appellee,
Community United Methodist Hospital, Inc., d/b/a
Methodist Hospital:.

Before COMBS, Chief Judge; WINE, Judge; GRAVES,[1]
Senior Judge.

**Opinion**

*OPINION*

GRAVES, Senior Judge.

*1 Harold Patterson, individually and as administrator of
the estate of Claressia Patterson, appeals from a jury
verdict in favor of William G. Marshall, Jr., M.D., and
Community United Methodist Hospital, Inc., d/b/a
Methodist Hospital (Methodist Hospital) on his claims of
medical negligence and negligent credentialing. On
appeal, Patterson argues that the trial court erred by: (1)
bifurcating the medical negligence and negligent
credentialing portions of the trial; (2) permitting
Methodist Hospital to participate fully in the defense of
Dr. Marshall; (3) excluding evidence of Dr. Marshall's
prior physical and emotional disabilities and his loss of
privileges at two Alabama hospitals; and (4) refusing to
compel Methodist Hospital to produce documents relating
to Dr. Marshall's credentials and peer review files. In
Appeal No.2008-CA-000157-MR, Appellant, BlueCross
BlueShield of Alabama, appeals from the judgment and
adopts the arguments of the Pattersons. We affirm.

Dr. Marshall performed an aorto-bifemoral bypass
surgery on Claressia Patterson on December 7, 1999, to

relieve symptoms of poor circulation in her legs. Following the surgery Claressia complained of an infection and leakage from her surgical wounds. On June 22, 2000, Dr. Marshall found purulent material draining from the wounds and treated her by cauterizing the wounds. On July 14, 2000, Claressia sought a second opinion from Dr. James Hohman. She was diagnosed with an infected surgical graft and underwent a complicated course of treatment, which ultimately resulted in the amputation of her left leg.

Claressia and Harold Patterson, *pro se*, filed a complaint in Henderson Circuit Court alleging medical negligence and loss of consortium claims against Dr. Marshall. The Kentucky School Boards Insurance Trust and BlueCross BlueShield of Alabama filed intervening complaints alleging subrogation claims. In 2001, the Pattersons retained counsel to pursue their claims. In 2003, the Pattersons filed an amended complaint alleging that Methodist Hospital negligently credentialed Dr. Marshall. Claressia died on June 28, 2007. Patterson was substituted as the administrator of her estate.

The trial court ordered that the trial proceed in three stages before the same jury. The medical negligence claim against Dr. Marshall would be tried first, including compensatory damages, without reference to the negligent credentialing claim against Methodist Hospital. If the jury found for the Pattersons, then Methodist Hosptial's statute of limitations defense would be heard next. Then, if the defense was not sustained, the negligent credentialing claim would be tried.

On November 21, 2007, the trial court ordered that all matters regarding Dr. Marshall's employment history, including his loss of credentials at other hospitals and his credentialing files, be kept from the jury during the initial phase of the case. The court overruled Patterson's motion to compel Methodist Hospital to produce Dr. Marshall's credentialing files and peer review files. The court permitted Methodist Hospital to participate in the defense of Dr. Marshall without mention of the negligent credentialing claim. Following trial, the jury found in favor of Dr. Marshall in a 9 to 3 verdict. The trial court entered judgment accordingly. This appeal followed.

*2 Patterson first argues that the trial court erred by bifurcating the medical negligence and negligent credentialing portions of the trial.

As a preliminary matter, we note that the tort of negligent credentialing has not been formally recognized in Kentucky. Apparently, at least 28 states recognize this cause of action and the parties proceeded under the assumption that negligent credentialing would be recognized in this Commonwealth. We need not discuss the validity of this cause of action for two reasons: (1) the negligent credentialing claim was ultimately never presented to the jury; and (2) the issue of the bifurcation of proceedings was not properly preserved for appellate review.

The determination of whether actions involving common questions of law or fact should be heard together is committed to the discretion of the trial court. *Massie v. Salmon,* 277 S.W.2d 49 (Ky.1955). First, we note that the proceedings did not constitute separate trials. The same jury was to hear the evidence regarding both claims. The trial court simply determined the order in which the evidence was presented. We have reviewed the record. The record indicates that the trial court utilized in large part the procedure that Patterson requested. In his memorandum regarding the bifurcation of trial, Patterson stated:

> Plaintiffs request that pursuant to this rule [CR 42.01], the Court should order the following:
>
> That a single jury be empaneled;
>
> That the issue of medical negligence first be presented to the jury, and that the parties be admonished to not mention or present any evidence or argument concerning the credentialing issues;
>
> That the jury determine medical negligence liability only through deliberation, on a single interrogatory jury form;
>
> That the parties then present opening statements, evidence, and argument concerning negligent credentialing, and compensatory and punitive damages;
>
> That the jury be instructed to determine the issue of negligent credentialing and to determine and allocate damages.

The trial court ordered that the medical negligence claim be heard first, including the issue of compensatory damages, without reference to the negligent credentialing claim. Next, the court ordered that if Patterson prevailed on the medical negligence claim, then the jury would hear evidence regarding Methodist Hospital's statute of limitations defense, and then proceed to the negligent credentialing claim. The only difference between the procedure utilized by the trial court and the procedure requested by Patterson was that the evidence of compensatory damages regarding the medical negligence claim was considered alongside the other evidence

pertaining to that claim and not alongside the evidence of negligent credentialing. Patterson cannot be heard now to complain about a procedure that he requested. Therefore, the preservation of this issue is limited to whether the trial court properly ordered the presentation of evidence of compensatory damages regarding the medical negligence claim. We find no abuse of discretion in this regard.

*3 Patterson next argues that the trial court erred by permitting Methodist Hospital to participate in the medical negligence phase of the trial. He cites *Earle v. Cobb*, 156 S.W.3d 257 (Ky.2004), in support of this argument.

In *Earle*, our Supreme Court held that it was error for the trial court to fail to identify to the jury a named party defendant at trial. The Court stated:

> CR 17.01 provides, in part, "Every action shall be prosecuted in the name of the real party in interest.... Nothing herein, however, shall abrogate or take away an individual's right to sue." In the case at bar, Appellee Indiana Insurance was a party defendant in the trial court and was allowed to participate in all pre-trial proceedings and discovery. At trial, however, it was not identified and the case was presented as if the only parties were the plaintiff, Earle, and the defendant, Cobb. Such a trial is fundamentally misleading to the jury and it deprives a plaintiff of the right to try her case against the party she chooses.
>
> ....
>
> The insurance company was in fact a party and we think properly so, because it had a direct contractual obligation to Mrs. Wheeler. Since the company was a party and was actively represented by counsel we think the jury was entitled to know that fact and to have the company's counsel identified. Otherwise the jury would be left to speculate as to the interest represented by an attorney participating in the trial who had no apparent connection with any of the parties. It is our opinion that the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield to the procedural desirability of letting the jury know who are the parties to the litigation where the uninsured motorist carrier elects to participate actively in the trial.

*Id.* at 259-60 (internal citations omitted).

The facts in the case at bar are distinguishable from *Earle*. Here, Methodist Hospital was named as a party defendant

to the jury from the outset. The trial court only withheld the nature of the Patterson's negligent credentialing claim from the jury during the initial phase of the trial. Moreover, Patterson's argument is not supported by the record. As with the bifurcation issue discussed above, Patterson requested that the nature of the negligent credentialing claim be withheld from the jury. Additionally, as agreed by the parties, deviation from the standard of care by the treating physician is a *prima facie* element of a negligent credentialing claim. To prevent Methodist Hospital from introducing evidence of Dr. Marshall's compliance with the standard of care would have prevented Methodist Hospital from defending itself against the negligent credentialing claim under the procedure utilized by the trial court. Moreover, review of *voir dire* belies the contention that the jury was confused by Methodist Hospital's presence in the case. The jury panel was informed that the case involved claims against both Dr. Marshall and Methodist Hospital. Counsel informed the jury that the trial would occur in two phases and that the same jury would hear both claims. The trial court did not abuse its discretion by allowing Methodist Hospital to participate in the medical negligence portion of the trial.

*4 Next, Patterson argues that the trial court erred by excluding evidence of Dr. Marshall's temporary physical and emotional disabilities prior to the surgery and his loss of privileges at two Alabama hospitals prior to the surgery. Patterson further argues that he was entitled to inquire into Dr. Marshall's background and qualifications because Dr. Marshall testified as an expert witness.

Appellate courts review the exclusion of evidence under the abuse of discretion standard. *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393 (Ky.App.2004). Kentucky Rules of Evidence (KRE) 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

The issue in the first phase of the trial was whether Dr. Marshall deviated from the standard of care in his post-operative treatment of Claressia. There was no evidence that Dr. Marshall experienced any disability during the time period of Claressia's treatment. The loss of Dr. Marshall's privileges at two Alabama hospitals

Patterson v. Marshall, Not Reported in S.W.3d (2009)

likewise had no bearing on his particular treatment of Claressia. The circumstances underlying Dr. Marshall's prior loss of privileges would have confused the issues of medical negligence and negligent credentialing. Dr. Marshall did not designate himself as an expert witness nor was he qualified as such. Dr. Marshall did not provide expert opinion testimony. Dr. Marshall simply related his factual observations regarding the treatment of Claressia. The trial court did not abuse its discretion.

Finally, Patterson argues that the trial court erred by failing to compel Methodist Hospital to produce documents relating to Dr. Marshall's hospital credentials and peer review files.

Prior to the trial in the present case, another medical negligence and negligent credentialing case (*Boyd v. Marshall* ) was pending in Henderson Circuit Court. Counsel for the Pattersons also represented the plaintiff Boyd against Dr. Marshall. In November 2006, the Pattersons served a request for documents upon Methodist Hospital. The request stated that any documents previously produced in the *Boyd* case would not need to be produced again and that a reference to the fact of prior production would suffice. Methodist Hospital responded to the request in January 2007 and restated several objections to the production of documents that had been raised in the *Boyd* case.

In the *Boyd* case, the trial court determined that certain of the requested documents were privileged and that the remaining documents might be discoverable after an *in camera* assessment. The *Boyd* case settled before the court conducted the *in camera* review. On November 16, 2007, Patterson filed a motion to compel the production of these documents, sought a ruling from the court with respect to the discovery order in *Boyd,* and sought

additional infection control documents. After a hearing, the trial court adopted the discovery order from the *Boyd* case and agreed to review the documents *in camera.* Methodist Hospital represented that it did not maintain infection control documents with respect to specific physicians. The trial court determined from the *in camera* review that the documents produced in the *Boyd* case were not relevant to the medical negligence claim. The trial court also concluded that the documents might be relevant to the negligent credentialing portion of the case and reserved ruling on the matter until the resolution of the medical negligence claim against Dr. Marshall.

**\*5** We have reviewed the documents presented for *in camera* inspection. The documents relate to behavioral issues Dr. Marshall experienced while at Methodist Hospital. The documents are not relevant to Dr. Marshall's treatment of Claressia. While the peer review privilege does not extend to medical malpractice claims and while the documents might have been relevant to the negligent credential claim, the issue is moot because the trial never advanced to that stage. Thus the plaintiff was not prejudiced by the denial of the motion to compel discovery during the medical negligence phase of the trial. Any error was harmless. *See Sisters of Charity Health Systems, Inc. v. Raikes,* 984 S.W.2d 464 (Ky.1998).

Accordingly, the judgment of the Henderson Circuit Court is affirmed.

ALL CONCUR.

Footnotes

1      Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

End of Document                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Kulka v. Vora, Not Reported in S.W.3d (2011)

2011 WL 918408
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RCP Rule 76.28(4)
before citing.

NOT TO BE PUBLISHED
Court of Appeals of Kentucky.

Sharon KULKA, Individually; and Sharon Kulka,
Testatrix of the Estate of Stephen M. Kulka,
Appellants
v.
Kishor N. VORA, M.D.; Owensboro Medical
Health System, Inc.; Owensboro Medical Practice,
LLC, d/b/a Owensboro Heart and Vascular;
Owensboro Medical Practice, d/b/a Immediate
Care Center, Appellees.

No. 2009–CA–000027–MR. | March 18, 2011.

West KeySummary

1    Pretrial Procedure
     Failure to Comply; Sanctions

     Healthcare providers' allegedly fraudulent
     withholding of documents concerning doctor's
     credentials during discovery did not constitute
     "fraud upon the court" such that testatrix of
     patient's estate was entitled to set aside a
     settlement    agreement   which   dismissed
     testatrix's medical negligence claims against
     healthcare providers. Sometime after the parties
     reached the settlement agreement, testatrix's
     counsel received documents concerning the
     doctor against whom testatrix had brought her
     claim in the course of representing another
     plaintiff. While the documents may have
     encouraged testatrix to pursue a negligent
     credentialing claim against doctor's employer,
     healthcare providers alleged nondisclosure of
     the materials did not rise to the level of "fraud
     affecting the proceedings" because it did not
     qualify as extrinsic fraud. Moreover, state law
     did not recognize a cause of action for negligent
     credentialing. Rules Civ.Proc., Rule 60.02(d).

Appeal from Daviess Circuit Court, Action No.
05–CI–00615; Thomas O. Castlen, Judge.

Attorneys and Law Firms

Sandra Spurgeon, Lexington, KY, Max S. Hartz,
Owensboro, KY, for appellant.

Charles G. Franklin, Madisonville, KY, for appellee,
Kishor N. Vora, M.D.; Owensboro Medical Practice, LLC
d/b/a Owensboro Heart and Vascular; and Owensboro
Medical Practice, d/b/a Immediate Care Center.

Ronald G. Sheffer, Phillip Monhollen, Louisville, KY, for
appellee, Owensboro Medical Health System, Inc.

Before CAPERTON, LAMBERT, and THOMPSON,
Judges.

Opinion

*OPINION*

CAPERTON, Judge.

*1 The Appellant Sharon Kulka, individually and as
testatrix of the estate of Stephen M. Kulka, appeals from
the denial of her CR[1] 60.02 motion to set aside an agreed
order of dismissal against the Appellees, Kishor N. Vora,
M.D.; Owensboro Medical Practice, LLC D/B/A
Owensboro Heart and Vascular; Owensboro Medical
Practice D/B/A Immediate Care Center; and Owensboro
Medical Health System, Inc.[2] On appeal, Kulka argues
that the trial court erred in not granting her CR 60.02[3]
motion because the Appellees had filed false and
misleading discovery responses prior to the settlement of
the case, which merited the agreed order of dismissal to
be set aside. After a thorough review of the parties'
arguments, the record, and the applicable law, we affirm
the trial court's denial of Kulka's CR 60.02 motion for the
reasons set forth herein.

Kulka filed a complaint on May 3, 2005, against the
Appellees for medical negligence after the death of
Stephen M. Kulka.[4] In addition, Kulka filed a claim for
negligent credentialing against OMHS for granting staff
privileges to Vora. Discovery in the case ensued. Kulka

contends that in relying upon the results of discovery provided by the Appellees, she filed a motion to dismiss the negligent credentialing claim against OMHS. The trial court granted the motion to dismiss on October 5, 2006. Thereafter, the parties entered into mediation on April 27, 2007. The parties agreed to a settlement and an agreed order of dismissal was entered on July 13, 2007, in which all claims' against the Appellees were dismissed with prejudice.

Subsequently, counsel for Kulka filed a civil action against Vora and OMHS on behalf of a different plaintiff. According to counsel for Kulka, during the course of discovery for that second case, ("*Peppers* ") counsel discovered that OMHS and Vora, in their responses to discovery to Kulka, had withheld significant material information about past issues concerning Vora: specifically, records concerning peer reviews of Vora and committee minutes wherein Vora was discussed. Kulka contends that if the documents that were provided in *Peppers* had been provided in response to discovery in their case, then the negligent credentialing claim against OMHS would have been pursued.

In light of the documents provided in *Peppers,* Kulka filed a motion pursuant to CR 60.02 on July 9, 2008 to set aside the agreed order of dismissal. The Appellees argued that the discovery sought in *Peppers* was substantially different then the discovery requests made by Kulka and, thus, they did not submit materially false, incomplete, or misleading responses to Kulka's discovery requests. After briefing by the parties and a hearing, the trial court issued an order on December 4, 2008, denying Kulka's motion to set aside the agreed order of dismissal pursuant to CR 60.02. It is from this order that Kulka now appeals.

On appeal Kulka presents six[6] arguments, which we have summarized into one dispositive issue: namely, whether the trial court erred in denying Kulka's motion under CR 60.02 in which she alleged that the Appellees submitted materially false, incomplete, and misleading discovery responses, i.e., fraud. The Appellees argue that the trial court properly denied Kulka's motion under CR 60.02.[7] With this issue in mind, we now turn to the applicable law.

**\*2** As an appellate court we review the denial of Kulka's CR 60.02 motion under an abuse of discretion standard, and will only overturn the trial court's exercise of discretion in the event of a miscarriage of justice. *Fortney v. Mahan,* 302 S.W.2d 842, 843 (Ky.1957), and *Richardson v. Bruner,* 327 S.W.2d 572, 873 (Ky.1959). Absent a showing of abuse of discretion, the trial court's decision in this matter should be affirmed. *Bethlehem*

*Minerals Co. v. Church and Mullins Corp.,* 887 S.W.2d 327, 329 (Ky.1994). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999) (citing 5 Am.Jur.2d *Appellate Review* § 695 (1995)). Additionally, "[t]wo of the factors to be considered by the trial court in exercising its discretion are whether the movant had a fair opportunity to present his claim at the trial on the merits and whether the granting of the relief sought would be inequitable to other parties." *Fortney* at 843. The purpose of CR 60.02 is "to provide relief where the reasons for the relief are of an extraordinary nature." *Ray v. Commonwealth,* 633 S.W.2d 71, 73 (Ky.App.1982).

In the case *sub judice* Kulka has argued that the Appellees' alleged discovery violations fit within multiple provisions of CR 60 .02. Specifically, Kulka presented to this Court through the Appellants' brief that the Appellees' behavior fit within CR 60.02(c) (perjury or falsified evidence), (d) (fraud affecting the proceedings, other than perjury or falsified evidence), and (f) (any other reason of an extraordinary nature justifying relief). At oral arguments, counsel for Kulka supplemented their arguments with CR 60 .02(b) (newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under CR 59.02) .[8] Additionally, at oral argument, counsel for Kulka acknowledged that only CR 60.02(c) and (d) had been argued to the trial court, and that CR 60.02(f) had not been argued.[9]

The law in this Commonwealth is clear. An appellate court will not consider an argument unless it has been raised before the trial court, and that court has been given an opportunity to consider the merits of the argument. *Shelton v. Commonwealth,* 992 S.W.2d 849, 852 (Ky.App.1998). Further, as our Supreme Court stated in *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky.1976) *overruled on other grounds by Wilburn v. Commonwealth,* 312 S.W.3d 321 (Ky.2010), an appellant "will not be permitted to feed one can of worms to the trial judge and another to the appellate court." Thus, the arguments concerning CR 60.02(b)(argued to our Court but not argued in Appellant's brief)[10] and (f)(not argued to the trial court)[11] are not properly before this Court and we shall only address the arguments concerning CR 60.02(c) and (d).

In addressing Appellant's argument under CR 60.02(c) (perjury or falsified evidence) we find that, pursuant to CR 60.02, such a motion must be filed within one year of the date of the order. Kulka's CR 60.02(c) motion was

Kulka v. Vora, Not Reported in S.W.3d (2011)

filed more than one year after the entry of the order, thus Kulka's CR 60.02(c) motion is untimely and we will not further address it on appeal. We now turn to Appellant's last argument, that of fraud under CR 60.02(d). In addressing Appellant's argument under CR 60.02(d) (fraud affecting the proceedings, other than perjury or falsified evidence), we find that Kulka's alleged fraud concerning discovery does not amount to "fraud affecting the proceedings" under CR 60.02(d). As held in *McMurry, supra:*

*3 The type of "fraud affecting the proceedings" necessary to justify reopening under CR 60.02(d) generally relates to extrinsic fraud. W. Bertelsman and K. Phillipps, *Kentucky Practice* CR 60.02, cmt. 6, at 426 (4th ed.1984). Extrinsic fraud covers "fraudulent conduct outside of the trial which is practiced upon the court, or upon the defeated party, in such a manner that he is prevented from appearing or presenting fully and fairly his side of the case." *Id.* Furthermore, "perjury by a witness or *nondisclosure of discovery material* is not the type of fraud to outweigh the preference for finality." *Id.* at 425.

In the case *sub judice,* Mary has failed to establish "fraud affecting the proceedings" as the term is used in CR 60.02(d). The record does not support her contention that Gordon attempted to or concealed and misrepresented any information relating to the medical practice or the couple's finances. This information was discoverable and could have been obtained through formal discovery if Mary had elected to do so in lieu of entering into the property settlement agreement without conducting an independent inquiry of her own. There is no evidence in the record-nor is any offered by the appellant-to indicate that Gordon acted in a fraudulent manner. Bare allegations will not suffice to establish "fraud affecting the proceedings." In the case *sub judice,* Mary has not met her burden of proving that Gordon's actions rise to the level of fraud.

*McMurry* at 733.

Recently our Court in *Goldsmith, supra* addressed CR 60.02(d) and noted:

Fraud upon the court is "that species of fraud which does or attempts to subvert the integrity of the court itself." Such fraud has been construed to include only the most egregious conduct, such as bribery of a judge or a member of the jury, evidence fabrication, and improper attempts to influence the court by counsel. Generally, fraud between the parties, without more, does not rise to the level of fraud upon the court. [*Rasnick v. Rasnick,* 982 S.W.2d 218, 219–220 (Ky.App.1998) ] quoting *Wise v. Nirider,* 261 Mont. 310, 862 P.2d 1128 (1993) (Internal citations omitted).

*Goldsmith* at 904. In light of *McMurry* and *Goldsmith* we must conclude that the alleged fraud by the Appellees based on the facts *sub judice* is not "fraud upon the court" as required by CR 60.02(d).[12] Thus, the trial court did not err in denying Kulka's motion.

The parties additionally argue exhaustively concerning the propriety of reopening the negligent credentialing claim against OMHS if the provisions of CR 60.02 were met. Given that we find no error in the trial court's denial of Kulka's CR 60.02 motion and that a negligent credentialing cause of action has not been recognized in Kentucky, we decline to address the parties' arguments concerning negligent credentialing.

In light of the aforementioned reasons, we find no error in the trial court's denial of Kulka's CR 60.02 motion and, accordingly, affirm.

ALL CONCUR.

Footnotes

1      Kentucky Rules of Civil Procedure

2      Hereinafter, Kishor N. Vora, M.D.; Owensboro Medical Practice, LLC D/B/A Owensboro Heart and Vascular; and Owensboro Medical Practice D/B/A Immediate Care Center will be referred to as "Vora" and Owensboro Medical Health System, Inc. will be referred to as "OMHS." When both Vora's and OMHS's arguments are identical they will be referred to as the "Appellees."

3      CR 60.02 states:
       On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no

Kulka v. Vora, Not Reported In S.W.3d (2011)

longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

4    Mr. Kulka was treated by Vora at OMHS on May 6, 2004. Appellants alleged that, due to the negligent treatment and care, Mr. Kulka died.

5    The agreed order of dismissal included all pending claims and claims that could have been brought. OMHS contends that this includes the dismissed negligent credentialing claim, even though a separate order had previously dismissed the negligent credentialing claim on October 5, 2006.

6    First, that there was sufficient evidence that Appellees submitted materially false, incomplete, and misleading responses to Appellants' discovery requests. Second, Appellees' materially false, incomplete, and misleading responses provide grounds to set aside the agreed order of dismissal under CR 60.02 and the statute of limitations does not preclude such setting aside. Third, the claim against OMHS may be reopened regardless of the status of the claim against Dr. Vora. Fourth, Appellants met the due diligence requirements of CR 60.02 in pursuing the negligent credentialing claim against OMHS. Fifth, the return of consideration is not a requirement for the court to set aside an agreed order of dismissal where materially false discovery responses were used to prevent the bringing of the claim against OMHS to mediation. Sixth, a settlement for damages under a wrongful death claim does not necessarily preclude damages being recovered under a negligent credentialing claim; in the alternative, the agreed order of dismissal should be set aside to allow for proper apportionment.

7    Vora presents six counter-arguments. First, these Appellees did not submit materially false, incomplete, or misleading responses to discovery. Second, there are no grounds to set aside the agreed order of dismissal under CR 60.02; Appellant's motion to set aside was not timely. Third, a negligent credentialing claim against the hospital is not a claim against Vora and Owensboro Medical Practice; they are not proper parties to this appeal. Fourth, Appellants did not meet the due diligence requirements of CR 60.02; they have failed to produce clear and convincing evidence. Fifth, return of consideration is required to set aside an agreed order of dismissal pursuant to CR 60.02. Sixth, Appellant has already settled for all damages; no other damages would be available on a negligent credentialing claim.
     OMHS also presents seven counter-arguments. First, Appellants' motion to set aside was properly denied as there was no evidence that Appellees submitted false, incomplete or misleading discovery responses. Second, the Discovery requests tendered in this case are not comparable to the discovery requests tendered in the *Peppers* case. Third, Appellants did not perform due diligence in the pursuit of their negligence credentialing claim. Fourth, the consideration paid to Appellants must be returned if they are seeking to have the settlement agreement set aside. Fifth, the status of the claim against Vora in this matter directly impacts the attempt to reopen the claim of negligent credentialing against OMHS. Sixth, alternatively, Appellants settled this claim in full for all damages recoverable and no additional damages can be sought from a negligent credentialing claim. Seventh, Vora was not and is not an employee or agent of OMHS.

8    *See* Video Record of Oral Argument 9/13/10 at 1:05 PM.

9    *See* Video Record of Oral Argument 9/13/10 at 1:03 PM.

10   Assuming arguendo that CR 60.02(b) had been properly argued before the trial court, we disagree with Kulka because we believe that the due diligence requirements of the rule were not met. During discovery OMHS provided *some* peer reviews to Kulka, and such were the basis of one of Kulka's arguments during oral argument. These limited peer reviews were contained within the credentialing file. Vora denied the existence of any peer reviews during discovery. We find that such a discrepancy was sufficient to alert Kulka to the need for further inquiry. Moreover, under CR 60.02(b) Kulka's motion was untimely because even though the agreed order of dismissal was filed July 13, 2007, and Kulka's CR 60.02 motion was filed on July 9, 2008, a separate order had previously dismissed the negligent credentialing claim on October 5, 2006, well over the one-year limitation for filing such a motion based on CR 60.02(b).

11   In reviewing Kulka's CR 60.02(f) argument, we find that this argument was briefed to our Court but not argued to the trial court. Assuming arguendo that CR 60.02(f) had been properly argued before the trial court, "CR 60.02(f) should only be invoked with extreme caution" and "is available only for reasons not otherwise set forth in the rule and ought not to be invoked so as to undermine the time constraints applicable to other subsections." *Goldsmith v. Fifth Third Bank,* 297 S.W.3d 898, 904 (Ky.App.2009) (citing to *Asset Acceptance v. Moberly,* 241 S.W.3d 329, 332 (Ky.2007). *See also McMurry v. McMurry,* 957 S.W.2d 731, 733 (Ky.App.1997) ("Relief is not available under CR 60.02(f) unless the asserted grounds for relief are not recognized under subsections (a), (b), (c), (d), or (e) of the rule."). Given that Kulka primarily asserts that the Appellees' behavior involves fraud, the other provisions of CR 60.02 apply and thus we would have declined to apply CR 60.02(f).

Kulka v. Vora, Not Reported in S.W.3d (2011)

12      We note that there was not an allegation of collusion between Vora and OMHS that may be the basis for an allegation of fraud.

---

End of Document                                          © 2013 Thomson Reuters. No claim to original U.S. Government Works.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
THIRD DIVISION
CASE NO. 13-CI-1028

**WEST CHESTER MEDICAL CENTER**                                  **PLAINTIFF**

    **v.**

**MONA EDER**                                                     **DEFENDANT**

---

## MOTION FOR VOLUNTARY DISMISSAL AND REALIGNMENT

---

### NOTICE

Please take notice that the undersigned, on the **29th day of October, 2013 at 9:00 a.m.** in the courtroom of the above Court, will make the Motion and tender the Order set out below.

### MOTION

Pursuant to Rule 41.01(2) of the Kentucky Rules of Civil Procedure, West Chester Medical Center voluntarily moves this Court to dismiss its claims asserted against Mona Eder.

Furthermore, with the voluntary dismissal of West Chester Medical Center's claims, the only remaining claims in this action are those asserted by Mona Eder against West Chester Medical Center, and Third-Party Defendants UC Health, Inc., Dr. Atiq Durrani, and the Center for Advanced Spine Technologies, Inc. As such, West Chester Medical Center hereby moves the Court for an order of realignment of parties, establishing Mona Eder as Plaintiff, and West Chester Medical Center, UC Health, Inc., Dr. Atiq Durrani, and the Center for Advanced Spine Technologies, Inc., as Defendants.

Respectfully Submitted,

_____

Walter E. Haggerty, Esq. (0005610)
Bill J. Paliobeis, Esq. (0066666)
FROST BROWN TODD, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel. (513) 651-6879
Email: whaggerty@fbtlaw.com
Email: bpaliobeis@fbtlaw.com
***Attorneys for West Chester Medical Center
and UC Health, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served on the following on this 17th day of October, 2013, by U.S. mail, postage paid:

Eric C. Deters, Esq.                    Michael F. Lyon, Esq.
Jesse A. Shore, Esq.                    David E. Williamson, Esq.
ERIC C. DETERS & ASSOCIATES             LINDHORST & DREIDAME
5247 Madison Pike                       312 Walnut Street, Suite 3100
Independence, Kentucky 41051            Cincinnati, Ohio 45202-4091
*Attorney for Defendants*               *Attorneys for Respondents Abubakar Atiq*
                                        *Durrani, M.D. and Center for Advanced Spine*
                                        *Technologies, Inc.*


_____

**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**THIRD DIVISION**
**CASE NO. 13-CI-1028**

**WEST CHESTER MEDICAL CENTER**                                    **PLAINTIFF**

     **v.**

**MONA EDER**                                                              **DEFENDANT**

---

### ORDER DISMISSING WEST CHESTER MEDICAL CENTER'S COMPLAINT AND REALIGNING PARTIES

---

West Chester Medical Center, having moved this Court for an Order allowing its voluntary dismissal of its claims asserted against Mona Eder, and the Court having heard arguments of counsel for their positions, and the Court being duly advised does, therefore, pursuant to Rule 41.01(2) of the Kentucky Rules of Civil Procedure, and its discretionary powers, order as follows:

West Chester Medical Center's claims against Mona Eder are hereby DISMISSED and the parties are realigned with Mona Eder as the Plaintiff, and West Chester Medical Center, UC Health, Inc., Dr. Atiq Durrani, and the Center for Advanced Spine Technologies, Inc., as Defendants.

This _____ day of _____, 2013.

                                   _____

                                   **Judge, Boone Circuit Court**

LOULibrary 0123682.0610258  1559764v1

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Mona Eder

**DEFENDANTS**
UC Health, Inc.

**(b)** County of Residence of First Listed Plaintiff   Boone
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Eric C. Deters
5247 Madison Pike
Independence, KY 41051 - (859) 363-1900

Attorneys *(If Known)*
James B. Metzger, Jr./Bill Paliobeis (502-589-5400)
Frost Brown Todd LLC
400 W. Market Street, 32nd Flr., Louisville, KY 40202

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ❏ 1 | U.S. Government | ❏ 3 Federal Question |
| | Plaintiff | *(U.S. Government Not a Party)* |
| ❏ 2 | U.S. Government | ☒ 4 Diversity |
| | Defendant | *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | 28 USC 157 | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 470 Racketeer Influenced and |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 840 Trademark | Corrupt Organizations |
| Student Loans | ❏ 340 Marine | Injury Product | | | ❏ 480 Consumer Credit |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 862 Black Lung (923) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | | ❏ 895 Freedom of Information |
| | ☒ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | | ❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | ❏ 950 Constitutionality of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ❏ 1 Original Proceeding | ☒ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from Another District *(specify)* | ❏ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U. S. C. §1446
Brief description of cause:
Plaintiff seeks recovery for alleged injuries as result of surgeries

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE             DOCKET NUMBER

DATE
10/17/2013

SIGNATURE OF ATTORNEY OF RECORD
James B. Metzger, Jr.

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE



ENTERED
BOONE CIRCUIT/DISTRICT COURT
OCT 3 1 2013
DIANNE MURRAY, CLERK
BY: _____ D.C.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 13-CI-01028

**WEST CHESTER MEDICAL CENTER**                                          **PLAINTIFF**

**VS.**

**MONA EDER**                                                                          **DEFENDANT**

### ORDER

West Chester Medical Center, having moved this Court for an Order allowing its voluntary dismissal of its claims asserted against Mona Eder, and the Court having heard arguments of counsel for their positions, and the Court being duly advised does, therefore, pursuant to Rule 41.01(2) of the Kentucky Rules of Civil Procedure, and its discretionary powers, order as follows:

West Chester Medical Center's claims against Mona Eder are hereby **DISMISSED** and the parties are realigned with Mona Eder as Plaintiff, and West Chester as Defendant.

**ORDERED** this 30th day of October 2013.

_____
**JAMES R. SCHRAND, JUDGE**
**BOONE CIRCUIT COURT**

CC: ALL ATTORNEYS AND PARTIES OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit
Court, do hereby certify that I have mailed a copy of the
foregoing order and notice to all parties hereto at
their last known addresses or their counsel of record
This 31 day of Oct., 2013.
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
BY _____ D.C.



**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**THIRD DIVISION**
**CASE NO. 13-CI-1028**

**MONA EDER**                                                                      **PLAINTIFF**

**V.**

**WEST CHESTER MEDICAL CENTER, et al.[1]**                **DEFENDANTS**

---

**DEFENDANT MONA EDER'S MOTION FOR JOINDER OF ADDITIONAL PARTIES**
**PURSUANT TO CR 19.01**

---

Plaintiff, by and through counsel, pursuant to CR 19.01 and other applicable law, asks

this Court to formally join the additional parties of Dr. Abubakar Atiq Durrani ("Dr. Durrani"),

The Center for Advanced Spine Technologies, Inc. ("CAST") and UC Health as additional

parties to this litigation.

**I.      FACTS**

In or around March 2011, Mrs. Eder was referred to Dr. Durrani at his CAST practice

due to pain in her neck and shoulder areas. During her first consultation with Dr. Durrani at his

CAST offices, he immediately recommended a fusion surgery. Mrs. Eder's consultations pre

and post-op with Dr. Durrani occurred at his CAST offices in Ohio and in Boone County,

Kentucky. On October 12, 2011, Mrs. Eder underwent an unnecessary fusion surgery at West

Chester Hospital in West Chester, Ohio. Although not confirmed, it is believed that Dr. Durrani

used a bone graft material known as Infuse/BMP-2, a medical product sold by Medtronic. Mrs.

Eder in the time since the surgery has experienced new limitations on her movement not present

---

[1] This case was originally captioned as West Chester Medical Center v. Mona Eder. However, on October 29, 2013 at this Court's motion hour, this Court ordered a re-alignment of parties based upon West Chester Medical Center's motion for voluntary dismissal of its collection action. A written order stating the same was entered on October 31, 2013.

prior to the surgery. Mrs. Eder has also experienced pain that was not present prior to the surgery. Mrs. Eder was *never* informed that Infuse/BMP-2 would be used in a manner not approved for use by the FDA and never gave informed consent for such a use. Mrs. Eder was *never* informed that Puregen would be used in her surgery and she never gave informed consent for its use. (*See generally* Counterclaim at ¶ 9-42).

## II.    CR 19.01

CR 19.01 (*emphasis added*) states in part: "A person who is subject to service of process, either personal or constructive, ***shall be joined as a party in the action*** if (a) in his absence ***complete relief cannot be afforded among those already parties,*** or (b) he claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, ***the court shall order that he be made a party***."

## III.   ARGUMENT

In this case, the above parties are necessary parties who must be joined to this litigation. Complete relief for Mrs. Eder's medical malpractice claims against West Chester Medical Center cannot be afforded without their presence.

Dr. Durrani is a necessary party as the doctor who performed the surgery at issue. He also provided all pre and post-operative treatment and follow-up for Mrs. Eder. In short, it was Dr. Durrani who consulted with Mrs. Eder prior to her surgery at West Chester Medical Center; it was Dr. Durrani who recommended and scheduled Mrs. Eder's surgery; it was Dr. Durrani who performed the subject surgery, and it was Dr. Durrani who followed up with Mrs. Eder

following her surgery at West Chester Medical Center. (*Counterclaim* ¶11-18, 40). Complete relief on Mrs. Eder's claims of medical malpractice cannot be adjudicated without the presence of the doctor who committed the malpractice.

CAST is a necessary party as this is Dr. Durrani's practice group and at all times relevant to this litigation he was acting in the scope of his employment with CAST. (*Counterclaim* ¶ 51-57). Notably, Dr. Durrani is the President of CAST. Additonally, Mrs. Eder pre and post-operative appointments with Dr. Durrani occurred at his CAST offices. (*Counterclaim* ¶11-18, 40). Complete relief cannot be adjudicated without the presence of Dr. Durrani's practice group with whom he was an employee while committing the malpractice.

UC Health is a necessary party to this litigation as it is UC Health who owns and or operates West Chester Medical Center. Furthermore, it was UC Health who approved the credentialing of Dr. Durrani as a physician with West Chester Medical Center. (*Counterclaim* ¶67-74). Complete relief cannot be adjudicated without the presence of the entity that approved Dr. Durrani's credentialing at West Chester Medical Center on Mrs. Eder's negligent credentialing claims. Furthermore, the billing sent to Mrs. Eder for her surgery at West Chester Medical Center was prepared by and sent by UC Health.

Complete relief on the medical malpractice and other claims cannot be afforded with only Mrs. Eder and West Chester Medical Center alone. Furthermore, the absence of these parties from this action would likely impede their ability to protect their own interest in the outcome. "An indispensable party is one whose absence prevents the Court from granting complete relief among those already parties." *Milligan v. Schenley Distillers, Inc.*, 584 S.W.2d 751, 753 (Ky. App. 1979). *See also Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 387 (Ky. App. 2004) (a necessary party is one whose interest would be divested by an adverse

judgment). Again, the absence of these parties would prevent this Court from granting Mrs. Eder the complete relief she seeks on her medical malpractice and other claims.

## IV.    CONCLUSION

For the reasons set forth above, the above individuals and entities must be made parties to this litigation and Mrs. Eder asks this Court to formally join these individuals and entities as parties to this litigation pursuant to CR 19.01.


Respectfully Submitted,


Jesse A. Shore (95147)
Law Office
5247 Madison Pike
Independence, Kentucky 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
E-mail: jshore@ericdeters.com
*Counsel for Mona Eder*

## **NOTICE**

Please take notice that the above motion shall come on for hearing on the 12th day of November, 2013, at 9:00 a.m. or as soon thereafter as counsel may be heard.


4

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 5th day of November, 2013 via regular mail upon the following:

Bill J. Paliobeis
Walter E. Haggerty
Frost Brown Todd, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
*Counsel for West Chester Medical Center & UC Health*

David E. Williamson
Lindhorst & Dreidame
312 Walnut Street, Suite 3100
Cincinnati, OH 45202
*Counsel for Durrani & CAST*

Jesse A. Shore

5

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 13-CI-1028

MONA EDER                                          PLAINTIFF

V.

WEST CHESTER MEDICAL CENTER, et al.                DEFENDANTS

ORDER

Mona Eder, having moved this Court for an Order to join Dr. Abubakar Atiq Durrani, The Center for Advanced Spine Technologies, Inc. and UC Health as necessary parties to this litigation.

**IT IS HEREBY ORDERED AND AJUDGED** as follows:

1.    Dr. Abubakar Atiq Durrani, The Center for Advanced Spine  Technologies, Inc. and UC Health are hereby joined as parties to this litigation pursuant to CR 19.01.


_____
**JAMES R. SCHRAND, JUDGE**
**BOONE CIRCUIT COURT**

CC: ALL ATTORNEY AND PARTIES OF RECORD